UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

KATHERINE ANN GREEN,

      Plaintiff,

v.                                    Case No. 1:08-cv-678
                                    Hon. Gordon J. Quist

COMMISSIONER OF SOCIAL
SECURITY,

      Defendant.

_____/

**REPORT AND RECOMMENDATION**

Plaintiff brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of a final decision of the Commissioner of the Social Security Administration (Commissioner) denying her claim for disability insurance benefits (DIB) and supplemental security income (SSI).

Plaintiff was born on July 26, 1973 (AR 72). She completed the 10th grade and later earned a GED (AR 212).[1] She alleged a disability onset date of October 15, 2004 (AR 72). From 1994 through 2003, plaintiff has worked for at least 18 different employers, in positions such as factory worker, warehouse worker, housekeeper, daycare worker, hand packer, commercial cleaner and sorter (AR 98, 120, 199-20). Plaintiff identified her disabling condition as a learning disability (AR 118). She explained that this condition limits her work because she is unable to read well (she asks her family and friends to read for her) and has trouble spelling and completing job applications (AR 119). After administrative denial of plaintiff's claim, an Administrative Law Judge (ALJ)

---

[1] Citations to the administrative record will be referenced as (AR "page #").

reviewed plaintiff's claim *de novo* and entered a decision denying these claims on September 28, 2007 (AR 13-20). This decision, which was later approved by the Appeals Council, has become the final decision of the Commissioner and is now before the Court for review.

## I. LEGAL STANDARD

This court's review of the Commissioner's decision is typically focused on determining whether the Commissioner's findings are supported by substantial evidence. 42 U.S.C. §405(g); *McKnight v. Sullivan*, 927 F.2d 241 (6th Cir. 1990). "Substantial evidence is more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cutlip v. Secretary of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994). A determination of substantiality of the evidence must be based upon the record taken as a whole. *Young v. Secretary of Health & Human Servs.*, 925 F.2d 146 (6th Cir. 1990).

The scope of this review is limited to an examination of the record only. This Court does not review the evidence *de novo*, make credibility determinations or weigh the evidence. *Brainard v. Secretary of Health & Human Services*, 889 F.2d 679, 681 (6th Cir. 1989). The fact that the record also contains evidence which would have supported a different conclusion does not undermine the Commissioner's decision so long as there is substantial support for that decision in the record. *Willbanks v. Secretary of Health & Human Services*, 847 F.2d 301, 303 (6th Cir. 1988). Even if the reviewing court would resolve the dispute differently, the Commissioner's decision must stand if it is supported by substantial evidence. *Young*, 925 F.2d at 147.

A claimant must prove that he suffers from a disability in order to be entitled to benefits. A disability is established by showing that the claimant cannot engage in substantial gainful

2

activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months.  *See* 20 C.F.R. §§ 404.1505 and 416.905; *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990).  In applying the above standard, the Commissioner has developed a five-step analysis:

> The Social Security Act requires the Secretary to follow a "five-step sequential process" for claims of disability.  First, plaintiff must demonstrate that she is not currently engaged in "substantial gainful activity" at the time she seeks disability benefits. Second, plaintiff must show that she suffers from a "severe impairment" in order to warrant a finding of disability.  A "severe impairment" is one which "significantly limits . . . physical or mental ability to do basic work activities." Third, if plaintiff is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the impairment meets a listed impairment, plaintiff is presumed to be disabled regardless of age, education or work experience. Fourth, if the plaintiff's impairment does not prevent her from doing her past relevant work, plaintiff is not disabled. For the fifth and final step, even if the plaintiff's impairment does prevent her from doing her past relevant work, if other work exists in the national economy that plaintiff can perform, plaintiff is not disabled.

*Heston v. Commissioner of Social Security*, 245 F.3d 528, 534 (6th Cir. 2001) (citations omitted).

The claimant bears the burden of proving the existence and severity of limitations caused by her impairments and the fact that she is precluded from performing her past relevant work through step four.  *Jones v. Commissioner of Social Security*, 336 F.3d 469, 474 (6th Cir. 2003). However, at step five of the inquiry, "the burden shifts to the Commissioner to identify a significant number of jobs in the economy that accommodate the claimant's residual functional capacity (determined at step four) and vocational profile." *Id.*  If it is determined that a claimant is or is not disabled at any point in the evaluation process, further review is not necessary. *Mullis v. Bowen*, 861 F.2d 991, 993 (6th Cir. 1988).

The federal court's standard of review for SSI cases mirrors the standard applied in social security disability cases. *See Bailey v. Secretary of Health and Human Servs.*, No. 90-3265, 1991 WL 310 at * 3 (6th Cir. Jan. 3, 1991). "The proper inquiry in an application for SSI benefits is whether the plaintiff was disabled on or after her application date." *Casey v. Secretary of Health and Human Services*, 987 F.2d 1230, 1233 (6th Cir. 1993).

**II. ALJ'S DECISION**

Plaintiff's claim failed at the fourth step of the evaluation. The ALJ initially found that plaintiff had not engaged in substantial gainful activity since October 15, 2004, the alleged onset of disability (AR 15). Second, the ALJ found that plaintiff had the following severe impairments: learning disability in reading and depression (AR 15). At the third step, the ALJ found that plaintiff did not have an impairment or combination of impairments that met or equaled the requirements of the Listing of Impairments in 20 C.F.R. Pt. 404, Subpt. P, App. 1 (AR 16). The ALJ decided at the fourth step that plaintiff had the residual functional capacity (RFC) "to perform a full range of work at all exertional levels but with the following nonexertional limitations: the claimant is limited to simple, unskilled work activity" (AR 18). Given these restrictions, the ALJ found that plaintiff could perform her past relevant work as a commercial cleaner and hand packer (AR 20). These jobs were unskilled jobs performed at the medium exertional level (AR 20).

Although the ALJ found that plaintiff was not disabled at step four, he continued the sequential evaluation to step five, where he determined that plaintiff could perform 10,000 jobs in the regional economy that involved simple, unskilled work activity with no reading (AR 20). The available jobs included janitor (3,800) and assembler (2,000) (AR 20). Accordingly, the ALJ determined that plaintiff was not under a disability and entered a decision denying benefits (AR 20).

**III.   ANALYSIS**

Plaintiff raises two related issues for review.

**A.   The ALJ committed reversible error at Step 3 of the sequential evaluation process by failing to determine that plaintiff's IQ scores below 60 satisfy Listing 12.05B.**

**B.   The ALJ committed reversible error by ignoring or not giving appropriate weight to the assessments of the consultative examiners and the testimony of the plaintiff.**

The thrust of plaintiff's claim is that her low IQ scores meet the criteria to be found disabled under the listing for mental retardation, 12.05B. A claimant bears the burden of demonstrating that he meets or equals a listed impairment at the third step of the sequential evaluation. *Evans v. Secretary of Health & Human Servs.*, 820 F.2d 161, 164 (6th Cir.1987). In order to be considered disabled under the Listing of Impairments, "a claimant must establish that his condition either is permanent, is expected to result in death, or is expected to last at least 12 months, as well as show that his condition meets or equals one of the listed impairments." *Id.* An impairment satisfies the listing only when it manifests the specific findings described in the medical criteria for that particular impairment. 20 C.F.R. §§ 404.1525(d); 416.925(d). A claimant does not satisfy a particular listing unless all of the requirements of the listing are present. *See Hale v. Secretary of Health & Human Servs.*, 816 F.2d 1078, 1083 (6th Cir.1987); *King v. Heckler*, 742 F.2d 968, 973 (6th Cir.1984). *See, e.g., Thacker v. Social Security Administration*, 93 Fed.Appx. 725, 728 (6th Cir 2004) ("[w]hen a claimant alleges that he meets or equals a listed impairment, he must present specific medical findings that satisfy the various tests listed in the description of the

applicable impairment or present medical evidence which describes how the impairment has such equivalency").

The medical criteria for a listing, i.e., the inability to perform "gainful activity," presents a higher level of severity from the statutory standard, i.e., the inability to perform "substantial gainful activity." *Sullivan v. Zebley*, 493 U.S. 521, 532 (1990). "The reason for this difference between the listings' level of severity and the statutory standard is that, for adults, the listings were designed to operate as a presumption of disability that makes further inquiry unnecessary." *Id.* Consequently, when a claimant successfully demonstrates that he meets a listed impairment, the Commissioner will find the claimant disabled without considering his age, education and work experience. 20 C.F.R. §§ 404.1520(d); 416.920(d).

Listing 12.05B provides in pertinent part as follows:

12.05 Mental retardation: Mental retardation refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; i.e., the evidence demonstrates or supports onset of the impairment before age 22.

The required level of severity for this disorder is met when the requirements in A, B, C, or D are satisfied.

\*   \*   \*

B. A valid verbal, performance, or full scale IQ of 59 or less [.]

Listing 12.05B, 20 C.F.R. Pt. 404, Subpt. P, App. 1.

A DDS examining psychologist, Jeffery T. Kieliszewski, Ph. D., found that plaintiff suffered from dysthymic disorder and borderline intellectual functioning with "significant intellectual deficits" (AR 161-64). A second DDS examining psychologist, Raul P. Madrid, Psy. D., performed an IQ test on plaintiff (AR 166). Dr. Madried determined that plaintiff had a verbal

IQ score of 58, a performance IQ score of 57 and a full IQ score of 53, and diagnosed her as suffering from mild mental retardation (AR 166). This is the only IQ test in the administrative record. Although the ALJ acknowledged that all three of plaintiff's IQ scores would meet the criteria of Listing 12.05B, he found that plaintiff did not meet the listing because there was "no evidence of adaptive functioning manifested during the developmental period" (i.e., before age 22) (AR 17, 165-66). In support of this conclusion, the ALJ cryptically noted that plaintiff had a 2.60 grade point average (GPA) in high school and that her adaptive functioning was higher than the IQ scores (AR 17).

First, plaintiff contends that the ALJ erred in concluding that plaintiff did not manifest an onset of this impairment during her developmental period. The court agrees. Plaintiff was 31 years old when Dr. Madrid tested her. While there are no IQ tests in the record to demonstrate that plaintiff's impairment manifested itself before age 22, the absence of this evidence is not dispositive. Courts have observed that a person's IQ is presumed to remain fairly constant throughout their lifetime, absent evidence of an intervening event (e.g., sudden trauma) that caused mental retardation. *See Hodges v. Barnhart*, 276 F.3d 1265, 1268-69 (11th Cir. 2001); *Muncy v. Apfel*, 247 F.3d 728, 734 (8th Cir. 2001); *Luckey v. U. S. Department of Health and Human Services*, 890 F.2d 666, 668 (4th Cir. 1989). In this case, there is no evidence that plaintiff suffered an injury after age 22 that reduced her IQ. Accordingly, her IQ scores may be presumed to have remained constant from childhood to adulthood.

This presumption is bolstered by plaintiff's early school record, which reflects that plaintiff was placed in special education classes in 1989 and attended those classes throughout her short high school career, which ended in the 10th grade (AR 159, 161, 220). Enrollment in special

education classes is relevant to a determination of mental retardation for purposes of § 12.05. *See, e.g., Maresh v. Barnhart*, 438 F.3d. 897, 900 (8th Cir. 2006)(in evaluating a claim under Listing 12.05, the fact that a claimant struggled through special education classes in 9th grade and then dropped out of high school indicates that mental retardation manifested itself before age 22); *Gist v. Barnhart*, No. 02-3691, 2003 WL 1924698 at *2-3 (3rd Cir. April 23, 2003) (documented attendance at special education classes is relevant to establish "significantly subaverage general intellectual functioning" under § 12.05); *Felver v. Barnhart*, 243 F. Supp. 2d 895, 907-08 (N.D. Ind. 2003) (evidence that plaintiff attended special education classes as a minor is material to whether he was mentally retarded under § 12.05).

The ALJ relies upon plaintiff's high school GPA of 2.60 as the main evidence demonstrating that she functions at a higher level than her IQ scores. However, the ALJ's analysis on this point is incomplete, because he fails to explain the illusory nature of this GPA. A high school GPA of 2.60 implies that the student functioned at an average academic level, perhaps earning B's and C's in her high school career. In this case, plaintiff's high school career lasted only two years, and her academic performance can hardly be described as average. It appears that this 2.60 GPA is weighted heavily on her grades achieved during the first semester of 9th grade (AR 156). It is unclear whether there are any records for plaintiff's second semester of 9th grade (AR 156). Her 10th grade transcript includes a "B" in work study, a "D" in "Cat. Eng."[2] and no credit for all other classes (AR 156). The court notes that plaintiff's 10th grade transcript does not include traditional classes such as math, science, or social studies (AR 156). Rather, plaintiff attended classes in environmental studies, family living, work study, "Cat. Eng.," and study hall (AR 156).

---

[2] Plaintiff indicates that "Cat. Eng." is a type of English class.

8

While the ALJ relied upon this GPA to demonstrate that plaintiff did not have a significant mental deficit, the GPA does not suggest that plaintiff exhibited any academic success in high school. She attended special education classes, performed poorly in most of those classes, and dropped out of school by the 10th grade. Given this academic record, the ALJ should have performed a more detailed review of plaintiff's mental capacity as it existed before age 22.

Next, plaintiff contends that the ALJ disregarded plaintiff's valid IQ scores when he concluded that plaintiff's adaptive functioning was inconsistent with those scores. The court agrees. The record indicates that plaintiff has substantial mental limitations: she does not have a driver's license due to her inability to read; her job applications are completed by others; she cannot read the Bible or a newspaper; she needs her daughter or a friend to help her use public transportation; she relies on her daughter to help manage her finances and count change while shopping; and she failed a basic test necessary to participate in a cosmetology program (AR 188-90, 219, 221-22, 223-26). While plaintiff obtained an online GED, she testified that it took her "about six tries" to pass it, and admitted that her sister actually did the work (AR 225-26). Furthermore, the record reflects that plaintiff has been able to work only short periods of time (typically less than six months) for any particular employer, due to her inability to complete paperwork (AR 79-82, 98, 212-13, 221-22).

The opinions of the examining pyschologists also suggest that plaintiff functions at a sub-average intellectual level. Dr. Kieliszewski found that plaintiff had significant intellectual deficits, including a limited immediate memory, limited recent memory, limited abstract thinking, and marginal calculation skills (AR 162-63). For example, plaintiff answered only 3 of the 6 simple arithmetic problems correctly; identified five large *cities* as "Illinois, Atlanta, Florida, California, Michigan;" and when asked to remember three words, could only recall one word after three minutes

9

(AR 163). Dr. Madrid opined that plaintiff put forth her best effort on the IQ test and that it was a valid indicator of the her current level of intellectual functioning (AR 165). Dr. Madrid felt that plaintiff's judgment, decision-making, general fund of knowledge, arithmetic computation skills, vocabulary usage related to reading comprehension, and symbol translation skills were all significantly impaired (AR 165). In rejecting these IQ scores, the ALJ apparently relied upon the mental RFC assessment prepared by non-examining DDS psychologist, J. Michael McCarthy, Ed. D., which disputed the validity of the IQ scores based upon plaintiff's high school GPA and certain observations made by Dr. Kieliszewski (i.e., that plaintiff's speech was clear, cooperative and goal oriented, and that her attention and memory were intact) (AR 168-72).

The ALJ's decision does not address the conflicting opinions of Drs. Kieleiszewski, Madrid and McCarthy with respect to the validity of plaintiff's IQ scores and the severity of her intellectual deficits. While it is unnecessary for the ALJ to address every piece of medical evidence, *see Heston*, 245 F.3d at 534-35, an ALJ "must articulate, at some minimum level, his analysis of the evidence to allow the appellate court to trace the path of his reasoning." *Diaz v. Chater*, 55 F.3d 300, 307 (7th Cir. 1995). "It is more than merely 'helpful' for the ALJ to articulate reasons . . . for crediting or rejecting particular sources of evidence. It is absolutely essential for meaningful appellate review." *Hurst v. Secretary of Health and Human Servs.*, 753 F.2d 517, 519 (6th Cir. 1985), *quoting Zblewski v. Schweiker*, 732 F.2d 75, 78 (7th Cir.1984).

**IV.    Recommendation**

For these reasons, I respectfully recommend that the Commissioner's decision be reversed and remanded pursuant to sentence four of 42 U.S.C. § 405(g). On remand, the

Commissioner should re-evaluate the opinions of Drs. Madrid, Kieliszewski and McCarthy, and whether plaintiff meets the requirements of Listing 12.05B.

Dated:  June 2, 2009                             /s/ Hugh W. Brenneman, Jr.
                                                 HUGH W. BRENNEMAN, JR.
                                                 United States Magistrate Judge

ANY OBJECTIONS to this Report and Recommendation must be served and filed with the Clerk of the Court within ten (10) days after service of the report.  All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b).  Failure to serve and file written objections within the specified time waives the right to appeal the District Court's order.  *Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).